UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN R. WHINFIELD ) | CIVIL ACTION NO. |
| ) | 3:12-CV-00812 (JCH) |
| Plaintiff. ) | |
| ) | |
| v. ) | |
| ) | |
| CAPITAS DISTRIBUTORS, INC., ) | |
| CAPITAS FINANCIAL, INC. and ) | |
| CAPITAS AGENCY, LLC ) | |
| ) | |
| Defendants. ) | |

## AMENDED COMPLAINT

### Count One (Breach of Employment Agreement as to CDI)

1. At all relevant times hereto, the plaintiff John R. Whinfield ("Whinfield"), is an individual residing at 271 Preston Terrace, Cheshire, Connecticut 06410.

2. At all relevant times hereto, the defendant Capitas Financial, Inc. ("Capitas Financial"), is a corporation organized and existing under the laws of the State of Delaware, with a business address located at 200 Coon Rapids Boulevard, NW, Suite 300, Minneapolis, Minnesota 55433. Capitas Financial is a life insurance brokerage company.

3. At all relevant times hereto, the defendant Capitas Distributors, Inc. ("CDI"), is a corporation organized and existing under the laws of the State of Delaware, with a business address located at 200 Coon Rapids Boulevard, NW, Suite 300, Minneapolis, Minnesota 55433. CDI is a wholly owned subsidiary of Capitas Financial.

4. At all relevant times hereto, the defendant Capitas Agency, LLC ("Capitas Agency"), is a limited liability company organized and existing under the laws of the State of Delaware, with a business address located at 600 South Highway 169, #710, Minneapolis, Minnesota 55426. Capitas Agency is a subsidiary and/or affiliate of Capitas Financial and is

governed by Capitas Financial.

5. CDI is a distribution company that focuses on life insurance sales in financial institutions. CDI employs insurance point-of-sale professionals (e.g., Sales Vice Presidents) working primarily in the institutional marketplace.

6. On or about August 11, 2010, Whinfield commenced employment with CDI, in the capacity of Sales Vice President, and was responsible for selling life insurance products on behalf of CDI.

7. Typically, CDI's Sales Vice Presidents procured purchasers of life insurance products, known as "clients", through third parties, known as "producers". However, CDI's Sales Vice Presidents were encouraged to independently produce their own clients whenever possible.

8. In the rare cases where CDI's Sales Vice Presidents produced their own clients to whom life insurance products were sold, it was express company policy for Sales Vice Presidents to receive base commissions on such sales as well as renewal commissions.

9. Prior to commencing employment, Whinfield entered into a *Sales Vice President Employment Agreement* ("Employment Agreement") with CDI on August 5, 2010. The Employment Agreement set forth terms under which Whinfield was to be paid override commissions earned and allotted monthly business expenses.

10. The Employment Agreement was written without contemplating sales involving Sales Vice Presidents as producers and bears no mention of base commissions or renewal commissions.

11. On or about November 1, 2011, Whinfield as producer, sold insurance policies to Alfred Lenoci, Sr. and Alfred Lenoci, Jr. (the "Lenoci cases") and became entitled to an override

commission on each case pursuant to ¶ 2.1 of the Employment Agreement.

12.     Shortly thereafter, Whinfield sold an insurance policy to Marilyn Shoemaker (the "Shoemaker case") and became entitled to an override commission on the case pursuant to ¶ 2.1 of the Employment Agreement.

13.     Paragraph 2.1 of the Employment Agreement reads as follows:

> **Commission.** CDI shall pay to the Employee at the end of each month a commission payment ("Commission") equal to the product of forty-five (45%) of all Profits (as defined below) attributable to the Employee. For purposes of this Agreement, the term "Profits" shall mean all revenue that CDI receives from the Products sold by the Employee less the aggregate amount of the Expenses (as defined in Section 2.3) paid to the Employee during the then current calendar month. All Commission payments will be paid to the Employee less regular deductions and withholdings.

14.     To date, CDI has failed to provide Whinfield with an accounting of the revenue it received from the Lenoci cases or the Shoemaker case (collectively the "cases") in accordance with ¶ 2.1 of the Employment Agreement.

15.     To date, CDI has failed to perform profit calculations in relation to the Lenoci cases and the Shoemaker case in accordance with ¶ 2.1 of the Employment Agreement.

16.     To date, CDI has failed to render override commission payments due and owing to Whinfield in relation to the Lenoci cases and the Shoemaker case.

17.     In addition, CDI contends that it is entitled to deduct from any override commission paid on the cases to Whinfield, all necessary business expenses reimbursed to Whinfield in accordance with ¶ 2.1 of the Employment Agreement. Monthly expenses are defined in ¶ 2.3(b) of the Employment Agreement as "reimbursement payments from CDI for gas, phone, travel and entertainment incurred in connection with the services provided pursuant to this Agreement."

18.     The aforementioned contention is contrary to the CDI expense policy as

referenced in Whinfield's July 4, 2010 offer of employment which provides that during the first six months of Whinfield's employment, he was to receive an expense allowance at a fixed rate of $3,500.00.

19. Whinfield's initial six month allowance, totaling $21,000.00, is not a reimbursable expense.

20. Nevertheless, CDI is seeking to recoup, from Whinfield's override commissions on the cases, $21,000.00 which it is not entitled to recover pursuant to the terms of its offer of employment to Whinfield.

21. CDI is in breach of the Employment Agreement for its failure to pay override commissions to Whinfield on the cases.

22. As a direct result of CDI's breach of the Employment Agreement, Whinfield has suffered over $110,000 in damages which represents the combined override commission he earned on the Lenoci cases and the Shoemaker case less the aggregate amount of expenses paid to Whinfield, not inclusive of the $21,000.00 allowance he was provided.

**Count Two (Equitable Action for Accounting against CDI)**

1-18. The allegations of paragraphs 1-18 of Count One are incorporated herein as paragraphs 1-18 of this Count Two as if fully alleged and set forth herein.

19. Whinfield is entitled to an accounting of revenue received by CDI from the Lenoci cases and the Shoemaker case, in accordance with ¶ 2.1 of the Employment Agreement, at common law and pursuant to C.G.S. § 52-401.

20. In the accounting requested in the Count, Whinfield is entitled to profit calculations in accordance with ¶ 2.1 of the Employment Agreement.

21. Judicial settlement of the commissions owing to Whinfield, in connection with the

Lenoci cases and Shoemaker case, is necessary so that said commissions may be distributed according to law.

## Count Three (Declaratory Judgment against CDI – Restrictive Covenants Are Unenforceable)

1-18. The allegations of paragraphs 1-18 of Count One are incorporated herein as paragraphs 1-18 of this Count Three as if fully alleged and set forth herein.

19. The parties' Employment Agreement contains restrictive covenants regarding solicitation of business and competition in the marketplace.

20. Paragraph 7 of the Employment Agreement contains non-solicitation covenants which sets forth the following:

> **Non-Solicitation Covenants.** In consideration of the amounts to be paid to the Employer hereunder, the Employee covenants that the Employee shall, during the term of this Agreement, and for two (2) years following the termination or expiration of this Agreement, comply with the following separate and independent covenants:
>
> (a) The Employee will not, without CDI's prior written consent, either directly or indirectly, on the Employee's own behalf or in the service or on behalf of others, solicit, divert, or appropriate, any person or entity that was a National Account, a Regional Account or a registered representative of a National Account or Regional Account of CDI during the term of this Agreement.
>
> (b) The Employee will not, without CDI's prior written consent, either directly or indirectly, on the Employee's own behalf or in the service or on behalf of others, solicit, divert, or hire away, or attempt to solicit, divert or hire away, any person employed by CDI, Capitas or any affiliate of CDI or Capitas, whether or not such person is full-time or a temporary employee or agent and whether or not such employment or contractor relationship is pursuant to a written agreement.

21. Paragraph 8 of the Employment Agreement contains a non-compete agreement which sets forth the following:

**Non-Compete Agreement.**

    (a)   **Definition.** For purposes of this Section 8, the term "Competitive

5

Business" shall mean any business that, directly or indirectly, calls on, solicits, acts as agent for, or attempts to provide Products or services similar to those provided by CDI, Capitas or any other affiliate of CDI.

(b) **Prohibition; Term.** The Employee promises and agrees that if, during the term of this Agreement and for six (6) months following the termination or expiration of this Agreement, the Employee leaves the employment of CDI for any reason or for no reason at all, the Employee shall not, directly or indirectly, as an individual, partner, member, shareholder, director, officer, manager or any other relationship or capacity whatsoever:

  (i) engage in or otherwise be involved in any Competitive Business;

  (ii) render any services or information to or otherwise assist any otherperson, corporation, limited liability company, partnership, entity, enterprise, business, trust or association including, without limitation, an insurance company engaged in any Competitive Business; or

  (iii) engage in or otherwise be involved in any activity which interferes with or harms CDI's and/or Capitas' National Accounts or Regional Accounts.

(c) **Geographic Scope.** The obligations of the Employee under this Section 8 shall apply to any geographic area in which CDI, Capitas, any other affiliate of CDI: (a) has engaged in business during the term of this Agreement whether by providing services or promoting, selling or marketing such services or otherwise; or (b) has otherwise established its goodwill, business reputation or any customer or insurance carrier relations.

(d) **Consideration for Non-Compete.** The Employee understands and agrees that CDI's offer of employment constitutes independent and sufficient consideration for this non-compete provision. The Employee acknowledges that the request for this non-compete provision was made in the initial offer of employment that the Employee received from CDI. Executive will not challenge the independent nature of sufficiency of this consideration, either during the term of the Employee's employment with CDI or at any time thereafter.

22. The aforementioned restrictive covenants are overly broad.

23. Accordingly, this Court should declare these restrictive covenants

unenforceable.

24. The rights of the parties under this Agreement can only be determined by declaratory judgment.

25. All persons having an interest in the subject matter of this dispute have been joined as parties to this action.

26. Whinfield seeks a declaration of his rights and the rights of CDI in connection with these restrictive covenants contained within the Employment Agreement.

## Count Four (Declaratory Judgment against CDI – Restrictive Covenants Are Non-Binding)

1-21. The allegations of paragraphs 1-21 of Count Three are incorporated herein as paragraphs 1-21 of this Count Four as if fully alleged and set forth herein.

22. CDI has materially breached the Employment Agreement.

23. Accordingly, this Court should declare that the aforementioned restrictive covenants are non-binding with respect to Whinfield.

24. The rights of the parties under this Agreement can only be determined by declaratory judgment.

25. All persons having an interest in the subject matter of this dispute have been joined as parties to this action.

26. Whinfield seeks a declaration of his rights and the rights of CDI in connection with these restrictive covenants contained within the Employment Agreement.

## Count Five (Breach of Express Agreement as to CDI)

1-8. The allegations of paragraphs 1-8 of Count One are incorporated herein as paragraphs 1-8 of this Count Five as if fully alleged and set forth herein.

9. On or about November 1, 2011, Whinfield as producer, sold insurance policies to

7

Alfred Lenoci, Sr. and Alfred Lenoci, Jr., clients he independently obtained, and became entitled to a base commission on each case.

10. Whinfield was paid base commissions on the aforementioned cases but not in full.

11. As a direct result of CDI's breach of the express agreement it had with its Sales Vice Presidents, Whinfield has suffered approximately $53,000 in damages which represents the portion of the combined base commission CDI failed to pay him on the Lenoci cases.

**Count Six (Breach of Express Agreement as to CDI)**

1-9. The allegations of paragraphs 1-9 of Count One are incorporated herein as paragraphs 1-9 of this Count Six as if fully alleged and set forth herein.

10. On or about November 1, 2011, Whinfield as producer, sold insurance policies to Alfred Lenoci, Sr. and Alfred Lenoci, Jr., clients he independently obtained, and became entitled to a renewal commission on each case, to be paid yearly for as long as the policies remain in full force and effect.

11. To date, CDI has failed to pay Whinfield renewal commissions on the Lenoci cases.

13. As a direct result of CDI's breach of the express agreement it had with its Sales Vice Presidents, Whinfield has suffered damages in the amount of the renewal commission earned on the Lenoci cases as of the first anniversary of the Lenoci policies onward.

**Count Seven (Violation of Conn. Gen. Stat. § 31-72 as to CDI)**

1-21. The allegations of paragraphs 1-21 of Count One are incorporated herein as paragraphs 1-21 of this Count Seven as if fully alleged and set forth herein.

22-32. The allegations of paragraphs 1-11 of Count Five are incorporated herein as paragraphs 21-32 of this Count Seven as if fully alleged and set forth herein.

JEW/W0524/1001/1144012v1
06/19/13-HRT/LMA

33-44. The allegations of paragraphs 1-12 of Count Six are incorporated herein as paragraphs 33-44 of this Count Seven as if fully alleged and set forth herein.

45. CDI is an "employer" as defined in Conn. Gen. Stat. §§ 31-71a and 31-72.

46. Whinfield was an "employee" of CDI pursuant to Conn. Gen. Stat. §§ 31-71a.

47. The override, base and renewal commissions owed Whinfield on the Lenoci cases, and the override commission owed Whinfield on the Shoemaker case constitute "wages" under Conn. Gen. Stat. §§ 31-71a.

48. The failure of CDI to pay the aforementioned commissions owing to Whinfield constitutes a failure to pay wages in violation of Conn. Gen. Stat. §§ 31-72.

49. CDI's wrongful refusal to pay the commissions owing to Whinfield under the parties' Employment Agreement and express agreement, despite repeated demand for the same, was arbitrary and unreasonable and arose out of CDI's interest in realizing increased financial gain from the sale of the Lenoci policies and the Shoemaker policy.

50. As a result of CDI's violation Conn. Gen. Stat. §§ 31-72, Whinfield has suffered damages and is entitled to twice the full amount of the commissions owed, plus prejudgment interest, costs and reasonable attorney's fees.

**Count Eight (Tortious Interference with Contract Rights as to Capitas Financial)**

1-16. The allegations of paragraphs 1-16 of Count One are incorporated herein as paragraphs 1-16 of this Count Five as if fully alleged and set forth herein.

17. Capitas Financial, as the parent company of CDI, knew of the existence of the Employment Agreement between CDI and Whinfield.

18. Capitas Financial knew Whinfield was entitled to override commissions on the Lenoci cases and Shoemaker case pursuant to ¶ 2.1 of the Employment Agreement.

9

19. It was Capitas Financial that performed an accounting relative to the commissions, an accounting relative to expenses and tendered a check to Whinfield that was short on base commissions and included no override commissions. Specifically, on or about February 7, 2010, it was Capitas Financial that sent Whinfield a commission check on the Lenoci, Sr. case in the approximate amount of $234,000, an amount far less than what he was entitled to receive under the terms of the Employment Agreement. Consequently, Whinfield never negotiated the check.

20. By attempting to pay Whinfield a commission far less than what he was owed, and thereafter refusing to pay the full commission owed despite repeated demand for the same, Capitas Financial intentionally interfered with Whinfield's rights under the Employment Agreement. Further, by failing to pay a commission of the Lenoci, Jr. case and the Shoemaker case, Capitas Financial intentionally interfered with Whinfield's rights under the Employment Agreement.

21. Capitas Financial's intentional interference with Whinfield's rights under the Employment Agreement was done so that Capitas Financial and/or its subsidiaries and/or affiliates could realize increased financial gain from the sale of the Lenoci policies to Whinfield's detriment.

22. Capitas Financial, and CDI, took possession of the commission funds illegally and in violation of securities regulations in order to carry out their plan of underpaying Whinfield.

23. As a direct result of Capitas Financial's tortious interference with Whinfield's rights under the Employment Agreement, Whinfield has suffered damages.

**Count Nine (Tortious Interference with Contract Rights as to Capitas Agency)**

10

1-21.   The allegations of paragraphs 1-21 of Count Eight are incorporated herein as paragraphs 1-21 of this Count Eight as if fully alleged and set forth herein.

22.   Capitas Agency, as a subsidiary and/or affiliate of Capitas Financial, and as an affiliate of CDI, knew of the existence of the Employment Agreement between CDI and Whinfield.

24.   Capitas Agency knew Whinfield was entitled to override commissions on the Lenoci cases and Shoemaker case pursuant to ¶ 2.1 of the Employment Agreement.

25.   The entire profit earned on the insurance policy sold to Alfred Lenoci, Jr. was paid to Capitas Agency, and no portion of that profit was released to Whinfield as an override commission, in contradiction of the terms of the Employment Agreement.

26.   Capitas Agency's intentional interference with Whinfield's rights under the Employment Agreement was done so that Capitas Agency could realize increased financial gain from the sale of the Alfred Lenoci, Jr. policy to Whinfield's detriment.

27.   Capitas Agency, and CDI, took possession of the commission funds illegally in order to carry out their plan of underpaying Whinfield.

28.   As a direct result of Capitas Agency's tortious interference with Whinfield's rights under the Employment Agreement, Whinfield has suffered damages.

**Count Ten (Conversion as to Capitas Financial)**

1-21.   The allegations of paragraphs 1-21 of Count Eight are incorporated herein as paragraphs 1-21 of this Count Eight as if fully alleged and set forth herein.

22.   Capitas Financial, independently or via its subsidiaries and/or affiliates, without authorization, took ownership over Whinfield's unpaid commissions in contradiction to Whinfield's rights under the Employment Agreement.

JEW/W0524/1001/1144012v1
06/19/13-HRT/LMA

23. As a direct result of Capitas Financial's conversion of monies owed to Whinfield, Whinfield has suffered damages.

**Count Eleven (Conversion as to Capitas Agency)**

1-25. The allegations of paragraphs 1-25 of Count Nine are incorporated herein as paragraphs 1-25 of this Count Nine as if fully alleged and set forth herein.

26. Capitas Agency, without authorization, took ownership over Whinfield's unpaid commission, relative to the Alfred Lenoci, Jr. policy, in contradiction to Whinfield's rights under the Employment Agreement.

27. As a direct result of Capitas Agency's conversion of monies owed to Whinfield, Whinfield has suffered damages.

**WHEREFORE**, the plaintiff claims:

1. in relation to Count One, damages for breach of the Employment Agreement, attorney's fees, costs and such other relief the Court deems appropriate;

2. in relation to Count Two, a full and formal accounting of revenue received by CDI from the Lenoci cases, which is to include profit calculations as specified herein; a judgment in favor of the plaintiff in the sum found to be due to him on such accounting; prejudgment interest, attorney's fees, punitive damages and costs;

3. in relation to Count Three, a declaration that the restrictive covenants contained within the Employment Agreement are overly broad and unenforceable;

4. in relation to Count Four, a declaration that the plaintiff cannot be bound to the restrictive covenants within the Employment Agreement given the defendant's material breach of said agreement;

5. in relation to Count Five, damages for breach of the express agreement, attorney's fees, costs and such other relief as the Court deems just and equitable;

6. in relation to Count Six, damages for breach of the express agreement, attorney's fees, costs and such other relief as the Court deems just and equitable;

7. in relation to Count Seven, double damages, prejudgment interest, costs and attorney's fees pursuant to Conn. Gen. Stat. § 31-72;

8. in relation to Count Eight, damages, costs and such other relief as the Court deems just and equitable;

9. in relation to Count Nine, damages, costs and such other relief as the Court deems just and equitable;

10. in relation to Count Ten, damages, costs and such other relief as the Court deems just and equitable; and

11. in relation to Count Eleven, damages, costs and such other relief as the Court deems just and equitable.

Dated: June 19, 2013

PLAINTIFF:
JOHN R. WHINFIELD

By: _____/s/_____
James G. Green, Jr.
Fed. Bar No. ct05961
Jennifer E. Wheelock
Fed. Bar No. ct284494
McElroy, Deutsch, Mulvaney & Carpenter, LLP
His Attorneys
One State Street, 14th Floor
Hartford, CT 06103-4302
jgreen@mdmc-law.com
jwheelock@mdmc-law.com
Tel. No. (860) 522-5175
Fax No. (860) 522-2796

## CERTIFICATION

I hereby certify that on June 19, 2013, a copy of the foregoing was filed electronically and served by first-class mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Natalie Wyatt-Brown (phv05444)
Kevin D. Hofman (phvpending)
HALLELAND HABICHT, PA
33 South Sixth Street, Suite 3900
Minneapolis, MN 55402
Email: nwaytt-brown@hallelandhabicht.com
Email: khofman@hallelandhabicht.com

Pamela J. Moore (ct 08671).
Kelly Burns Gallagher (ct 27845)
MCCARTER & ENGLISH LLP
City Place I
185 Asylum Street
Hartford, CT 06103
Email: pmoore@mcccarter.com
Email: kgallagher@mccarter.com

/s/
James G. Green, Jr.

JEW/W0524/1001/1144012v1
06/19/13-HRT/LMA